No. 22-50144

# In the United States Court of Appeals for the Ninth Circuit

---

UNITED STATES OF AMERICA,
APPELLEE

*v.*

JEFFREY FORTENBERRY,
DEFENDANT-APPELLANT

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF CALIFORNIA (CRIM. NO. 21-491)*
*(THE HONORABLE STANLEY BLUMENFELD, JR., J.)*

---

### REPLY BRIEF OF APPELLANT

---

GLEN E. SUMMERS
BARTLIT BECK LLP
  *1801 Wewatta Street, Suite 1200*
  *Denver, CO 80202*

JOHN L. LITTRELL
BIENERT KATZMAN
  LITTRELL WILLIAMS LLP
  *903 Calle Amanecer, Suite 350*
  *San Clemente, CA 92673*

KANNON K. SHANMUGAM
WILLIAM T. MARKS
MATTEO GODI
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*
  *(202) 223-7300*
  *kshanmugam@paulweiss.com*

JING YAN
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *1285 Avenue of the Americas*
  *New York, NY 10019*

# TABLE OF CONTENTS

Page

I. Venue was improper in the Central District of California ......................2

    A. The proper venue for a Section 1001 prosecution is the location where the false statement was made..........................3

    B. The venue statute for continuing offenses does not apply ...................................................................................10

    C. The government's venue theory has no limiting principle...........18

    D. The Tenth and Eleventh Circuits have correctly rejected the effects tests ................................................21

II. The jury instruction on materiality constituted an incomplete statement of the law .....................................................................23

# TABLE OF AUTHORITIES

## CASES

*Brogan* v. *United States*, 522 U.S. 398 (1998)..............................24, 25

*Commonwealth* v. *Macloon*, 101 Mass. 1 (1869) ...................................7

*Elder* v. *Holloway*, 510 U.S. 510 (1994)...............................................28

*Griffin* v. *United States*, 502 U.S. 46 (1991) .......................................29

*Johnston* v. *United States*, 351 U.S. 215 (1956) ...................................7

*MK Hillside Partners* v. *Commissioner*, 826 F.3d 1200 (9th Cir. 2016)................................................................3

*Norwood* v. *Vance*, 591 F.3d 1062 (9th Cir. 2010) ..................25, 26, 27

*Peralta* v. *Dillard*, 744 F.3d 1076 (9th Cir. 2014)..................................6

*St. Clair* v. *United States*, 154 U.S. 134 (1894)....................................8

*Travis* v. *United States*, 364 U.S. 631 (1961)............................*passim*

Page

Cases—continued:

*United States* v. *Anderson*, 328 U.S. 699 (1946)....................................................4

*United States* v. *Angotti*, 105 F.3d 539 (9th Cir. 1997)..........................15, 16, 17

*United States* v. *Bachmeier*, 8 F.4th 1059 (9th Cir. 2021) ...............................27

*United States* v. *Barona*, 56 F.3d 1087 (9th Cir. 1995)....................................29

*United States* v. *Cabrales*, 524 U.S. 1 (1998) ...............................................7, 12, 17

*United States* v. *Coplan*, 703 F.3d 46 (2d Cir. 2012)..........................................22

*United States* v. *Garcia*, 854 F.2d 340 (9th Cir. 1988).......................................14

*United States* v. *Heredia*, 483 F.3d 913 (9th Cir. 2007) ...................................25

*United States* v. *Hernandez*, 189 F.3d 785 (9th Cir. 1999) ...........................3, 12

*United States* v. *Hillie*, 39 F.4th 674 (D.C. Cir. 2022)..................................27, 28

*United States* v. *John*, 477 Fed. Appx. 570 (11th Cir. 2012)............................20

*United States* v. *Johnson*:
    53 F. Supp. 596 (D. Del. 1944) .........................................................................14
    323 U.S. 273 (1944)..................................................................................*passim*

*United States* v. *Johnson*, 19 F.4th 248 (3d Cir. 2021)....................................23

*United States* v. *Litvak*, 808 F.3d 160 (2d Cir. 2015).........................................23

*United States* v. *Lozoya*, 982 F.3d 648 (9th Cir. 2020) ..........................13, 15, 18

*United States* v. *Miller*, 808 F.3d 607 (2d Cir. 2015) ........................................12

*United States* v. *Moran-Garcia*, 966 F.3d 966 (9th Cir. 2020) .........................11

*United States* v. *Oceanpro Industries, Ltd.*,
    674 F.3d 323 (4th Cir. 2012).....................................................................17, 22

Page

Cases—continued:

*United States* v. *Pace*, 314 F.3d 344 (9th Cir. 2002)....................................18, 19

*United States* v. *Ramirez*, 420 F.3d 134 (2d Cir. 2005)....................................12

*United States* v. *Ringer*, 300 F.3d 788 (7th Cir. 2002)................................21, 22

*United States* v. *Rodriguez-Moreno*, 526 U.S. 275 (1999) ...................3, 5, 9, 17

*United States* v. *Smith*, 641 F.3d 1200 (10th Cir. 2001) .............................20, 21

*United States* v. *Umaña*, 750 F.3d 320 (4th Cir. 2014) ....................................12

*United States* v. *Yermian*, 468 U.S. 63 (1984) .....................................................5

*Yokoyama* v. *Midland National Life Insurance Co.*,
    594 F.3d 1087 (9th Cir. 2010)...............................................................................26

## STATUTES

18 U.S.C. § 1001 ...................................................................................*passim*

18 U.S.C. § 1001(a)...........................................................................................1, 8

18 U.S.C. § 1014 ..........................................................................................16, 17

18 U.S.C. § 1343 ...................................................................................................18

18 U.S.C. § 3236 .....................................................................................................6

18 U.S.C. § 3237(a).............................................................................................*passim*

18 U.S.C. § 3238 .....................................................................................................8

28 U.S.C. § 103 ....................................................................................................14

Federal Denture Act, 18 U.S.C. § 420.................................................................14

After directing an informant to call Nebraska Congressman Jeffrey Fortenberry and suggest that illegal donations had been made to his campaign, the federal government prosecuted the Congressman in California on charges of making false statements about the call to federal agents, in violation of 18 U.S.C. § 1001(a). But venue did not lie in California, because the statements at issue were made in Nebraska and Washington, D.C. The district court improperly allowed the prosecution to proceed, and then committed a second error by declining to instruct the jury that it could not find materiality based on the circular theory that the statements triggered an investigation into the truth of those very statements. For each of those reasons, the Congressman's convictions should be vacated.

The government's contrary arguments reflect a fundamental misunderstanding of the law of venue and serious misgivings about its position at trial on materiality. With respect to venue: the government argues that Section 1001(a)'s materiality element is an essential conduct element that renders venue appropriate anywhere the defendant's statement could potentially affect a government investigation. But materiality is not a conduct element because proof of materiality does not depend on the defendant's conduct or require any actual effect on the government. The materiality element thus cannot support the government's effects-based venue test under the Constitution and Supreme Court precedent. The government also offers a theory of venue

that it did not present to the jury and that the district court declined to address: a continuing-offense theory under 18 U.S.C. § 3237(a). In raising that new argument, the government mistakenly concludes that Section 3237(a) is exempt from constitutional venue requirements, and relies on an incorrect history of the statute.

With respect to materiality: the government is in full-fledged retreat from the position it took before the district court. Despite persistently arguing to the contrary below, the government now concedes that a statement cannot be material merely because it has the potential to cause an investigation into the truth of the statement itself. To avoid the obvious need for vacatur on appeal, the government relies on alternative grounds for affirmance not raised below and leans heavily on harmlessness. But those arguments wither under close scrutiny.

In sum, because venue did not lie in California, and because the jury was permitted to convict based on an improper theory of materiality, the Congressman's convictions should be vacated.

## I. VENUE WAS IMPROPER IN THE CENTRAL DISTRICT OF CALIFORNIA

In a prosecution for the making of a false statement under Section 1001, venue is proper only where the defendant made the statement at issue. *See* Appellant Br. 22-31. The government resists that conclusion on two grounds. *First*, the government contends that Section 1001's materiality element is a

2

conduct element, permitting prosecution wherever a false statement could potentially affect a government investigation, even if the defendant engaged in no actual conduct there. *Second*, the government asserts a new venue theory on appeal, arguing that a Section 1001 offense continues to the location of the government investigation. Both of those theories are flawed, and they would permit the boundless prosecution of Section 1001 violations in far-flung jurisdictions. The Court should instead adopt the view of the Tenth and Eleventh Circuits and vacate the Congressman's conviction due to improper venue.[1]

### A. The Proper Venue For A Section 1001 Prosecution Is The Location Where The False Statement Was Made

The Constitution requires trial in the State and district where the alleged crime was committed—the *locus delicti*. Under the *locus delicti* test, courts interpret "the phrasing of a particular criminal statute," *Travis* v. *United States*, 364 U.S. 631, 635 (1961), in order to determine the "essential conduct elements" of the offense, *United States* v. *Rodriguez-Moreno*, 526

---

[1] This Court has held that a judgment of acquittal is not "the appropriate remedy in the case of improper venue." *United States* v. *Hernandez*, 189 F.3d 785, 792 n.5 (1999). In December 2022, however, the Supreme Court granted review in *Smith* v. *United States*, No. 21-1576, to consider the question "whether the proper remedy for the government's failure to prove venue is an acquittal barring reprosecution of the offense." Pet. at i. That case is scheduled for oral argument on March 28, 2023, and a decision is expected by the end of June. If the Supreme Court holds that acquittal is the proper remedy, this Court should revisit its circuit precedent and grant that same form of relief to the Congressman. *See, e.g.*, *MK Hillside Partners* v. *Commissioner*, 826 F.3d 1200, 1206 (9th Cir. 2016).

U.S. 275, 280 (1999). Venue is proper only where the defendant committed the essential conduct defined by the relevant criminal statute. *See United States* v. *Anderson*, 328 U.S. 699, 705 (1946). Other required elements of the offense, including elements that describe the circumstances surrounding the defendant's conduct, are irrelevant to the venue analysis. *See* Appellant Br. 23-24. Applied to Section 1001, the *locus delicti* test provides that venue for making a false statement to government officials lies only in the district where the statements were made. *See id.* at 26-31.[2]

The government agrees that venue "turns on where the 'essential conduct' elements of the crime occurred." U.S. Br. 34 (citation omitted). It also agrees that, under Section 1001, the defendant's conduct includes the "making" of the statement in question, such that venue is proper "where the statement is made." *Id.* at 35 (citation omitted). The government's only point of disagreement is whether the materiality element of Section 1001 is *also* an essential conduct element that provides the government a choice among multiple venues. The government raises several arguments in support of its sweeping conception of venue, but none withstands scrutiny.

1. Parroting the district court's reasoning, the government contends that materiality is "the essence of the criminal conduct" under Section 1001 because, "[a]bsent materiality, a false statement is not conduct proscribed by

---

[2] For a Section 1001 offense based on concealment, the analogous conduct element is concealing a material fact. *See* Appellant Br. 12, 17.

law." U.S. Br. 36 (citation omitted). The government's conclusion does not follow from its premise. It is true, of course, that "the act of making a false statement" alone is not a crime. *Id.* at 35 (citation omitted). But that is because circumstance elements are essential elements as well. That materiality is an essential element has no bearing on whether it is an essential *conduct* element.

Indeed, the government could make the same argument about Section 1001's jurisdictional element. Absent federal jurisdiction over the subject matter of a false statement, the making of the statement is not conduct proscribed by law. But the Supreme Court has labeled Section 1001's jurisdiction element as a mere "predicate circumstance." *United States* v. *Yermian*, 468 U.S. 63, 69 (1984). It is thus not an essential conduct element. *See Rodriguez-Moreno*, 526 U.S. at 279-280.

So too with materiality. For purposes of venue, Section 1001's materiality element is indistinguishable from its jurisdictional element—neither element requires proof of any conduct by the defendant. The government offers no explanation of how Section 1001's materiality element differs from its jurisdictional element. Instead, the government ignores the similarity and, in so doing, collapses the distinction between essential conduct elements and other essential elements that do not involve the defendant's conduct.

2.    The government contends that "[c]onduct is often defined by its effects," pointing to several other offenses that it believes contain effects-based conduct elements.  U.S. Br. 37.  The government then concludes that Section 1001 is such a statute.  *See id.* at 38.  There are at least two fundamental flaws in that argument.

a.    For starters, the government's examples do not prove its point. To the contrary, all of those examples demonstrate that venue depends on the defendant's conduct, not the ensuing effects of that conduct.  Consider 18 U.S.C. § 3236, which establishes venue for federal murder and manslaughter. The government argues that, under Section 3236, venue lies "'where the injury was inflicted,' not where the action occasioning the injury was initiated." Br. 37 (quoting Section 3236).  But the government omits a crucial part of the statute.  In full, the statute provides that venue lies "where the injury was inflicted, or the poison administered or other means employed which caused the death, *without regard to the place where the death occurs*."  18 U.S.C. § 3236 (emphasis added).  Section 3236 thus *rejects* effects-based venue:  if the defendant injured the victim in one State but the victim died in another, venue would lie only where the defendant injured the victim, not where the ultimate effect on the victim occurred.

In invoking Section 3236, the government seems to be envisioning a situation in which the defendant's conduct in one State injures a victim in another

6

State, such as a cross-border shooting. *See* U.S. Br. 37. But that example again proves the Congressman's point. A defendant who shoots across state lines "dispatch[es] [a] missive from one State into another," making the shooting "an act completed in" the State of injury. *United States* v. *Cabrales*, 524 U.S. 1, 9 (1998). In other words, the defendant is viewed as having reached across state lines by firing the bullet. Venue is thus proper in the State of injury not because of the effect on the victim, but rather because of the defendant's cross-border conduct.

The government next asserts that, in *Johnston* v. *United States*, 351 U.S. 215 (1956), the Supreme Court held that venue for the crime of failing to report for military duty is "proper *only* in the district where the harm or intended harm occurred." Br. 37. But the government misreads *Johnston*. There, the Court concluded that the defendants' failure to appear constituted the criminal act. Because venue "is determined by the acts of the accused," 351 U.S. at 220, the Court held that "venue must lie where the failure [to report] occurred" and not where the "residence of the accused" is located, *id.* at 221-222. The government's examples thus confirm that venue focuses on the conduct of the defendant, not the downstream effects of that conduct.[3]

---

[3] *Commonwealth* v. *Macloon*, 101 Mass. 1 (1869), which concerns common-law manslaughter on the high seas, is also inapposite. *See* U.S. Br. 37. There, the court focused primarily on the State's legislative jurisdiction under the state constitution. *See generally Macloon*, 101 Mass. at 5-15. Crimes on the

b.      Beyond its flawed examples, the government's argument that materiality is an essential conduct element of a Section 1001 offense suffers from a more fundamental problem:  namely, that the text of Section 1001 does not define conduct by its effects.  Section 1001 uses the words "material" and "materially," 18 U.S.C. § 1001(a), but the government fails to explain why materiality inherently concerns the defendant's conduct.  Nor is it apparent why that would be so.  As the government concedes, a statement can be material for purposes of Section 1001 even if it has no "actual effect on the government." Br. 47 (citation omitted).  It is hard to see how an element that can be satisfied in the absence of any real-world effect could define the defendant's conduct in terms of its effects.

At a minimum, Section 1001 is ambiguous with respect to whether materiality is a conduct element.  In contrast to other statutes that define the defendant's conduct as "affect[ing] commerce" or "caus[ing] damage," *see* Appellant Br. 37, Section 1001, by using the words "material" and "materially," does not clearly manifest an intent to provide for effects-based venue.  Where a statute is ambiguous as to which elements constitute conduct elements, a court should take a restrictive approach to the statute for venue purposes.  *See United States* v. *Johnson*, 323 U.S. 273, 276 (1944).  A broad construction of

---

high seas occur outside the boundaries of any State or district and thus are not subject to constitutional venue requirements.  *See St. Clair* v. *United States*, 154 U.S. 134, 145 (1894); *see also* 18 U.S.C. § 3238.

Section 1001 would allow for venue in multiple places—a result courts seek to avoid where Congress chose not to provide for "a choice of trial" through a specific venue provision. *Id.* Nor can one "make the cavalier assumption" that venue "specifically provided for in other enactments"—such as the witness-tampering statute, *see* Appellant Br. 36—"was authorized but through parsimony of language left unexpressed" in Section 1001. *Johnson*, 323 U.S. at 277.

Instead of coming to grips with the statutory text, the government argues that the *locus delicti* is not "categorically different" from the location of an offense's effects. U.S. Br. 38. That is a strawman. The Congressman made no such argument; to the contrary, his opening brief identifies multiple criminal statutes that clearly define the essential conduct elements in terms of their effects. *See* Appellant Br. 36-37. The government does not meaningfully address the differences between those statutes and Section 1001.

The government is also incorrect that the Congressman's argument relies on the "verb test" in contravention of *Rodriguez-Moreno*. *See* U.S. Br. 39. As a preliminary matter, *Rodriguez-Moreno* recognizes that, when reading a criminal statute, "the 'verb test' certainly has value as an interpretative tool" to determine the essential conduct elements; it merely instructs that the test "cannot be applied rigidly." 526 U.S. at 280. There is no dispute that, although verbs most commonly describe "conduct prohibited by statute," certain statutes may use other parts of speech for the same purpose. *Id.* In *Rodriguez-*

*Moreno* itself, the Court held that the phrase "crime of violence" was a conduct element because it required evidence showing that the defendant "committed all the acts necessary" to constitute such a crime. *Id.* But Section 1001's materiality element does not require the government to prove that the defendant committed any act whatsoever, and thus does not describe "conduct prohibited by statute." *Id.*

**B.    The Venue Statute For Continuing Offenses Does Not Apply**

The government next advances a new theory of venue on appeal, arguing that a violation of Section 1001 can constitute a continuing crime under 18 U.S.C. § 3237(a) where the defendant's statement has a potential effect on a government investigation in another jurisdiction. *See* Br. 40-49. In relevant part, Section 3237(a) provides that offenses "begun in one district and completed in another, or committed in more than one district," may be prosecuted "in any district in which such offense was begun, continued, or completed."

The government did not raise a continuing-offense theory of venue at trial; nor was the jury instructed on such a theory. Because venue is a question for the jury, the government can prevail on this alternative ground for affirmance only by making the difficult showing that "the evidence, had it been viewed by a rational jury, could *only* have led" to the conclusion that the

10

charged Section 1001 offenses began, continued, or were completed in the Central District of California. *United States* v. *Moran-Garcia*, 966 F.3d 966, 970 (9th Cir. 2020).

The government does not identify any evidence showing that the Congressman made any part of the relevant statements in the Central District, or that making the statements involved a continuing process. *See* U.S. Br. 59. Instead, the government repackages its effects-based theory as a continuing-offense theory. According to the government (Br. 49), a Section 1001 offense begins where the defendant made the relevant statement, and continues to the place or places where the statement could potentially influence the government investigation. The government is wrong.

1. The government understands the *locus delicti* test to have no independent application when the government invokes Section 3237(a); in its view, Section 3237(a) displaces that test and thereby eliminates any "implicit limitation on venue when a crime's commission spans multiple districts." Br. 43-44. That understanding is circular and incorrect.

Section 3237(a) does not override the constitutional *locus delicti* test, which focuses on the location of the essential conduct defined by the relevant criminal statute. All that Section 3237(a) provides is that, *if* an offense involves conduct in multiple jurisdictions, venue is available wherever the criminal conduct occurred. But Section 3237(a) does not define the relevant conduct for

any given substantive criminal statute; a court must still make that determination based on "the phrasing of a particular criminal statute." *Travis*, 364 U.S. at 635. As this Court and numerous others have thus recognized, before proceeding to Section 3237(a), it is necessary to determine the essential conduct elements of the underlying criminal statute. *See*, *e.g.*, *United States* v. *Hernandez*, 189 F.3d 785, 788-791 (9th Cir. 1999); *United States* v. *Miller*, 808 F.3d 607, 615-616 (2d Cir. 2015); *United States* v. *Umaña*, 750 F.3d 320, 333 (4th Cir. 2014). As a logical matter, only after identifying those elements can a court assess whether the relevant conduct occurred in multiple jurisdictions. If the answer is yes, Section 3237(a) permits prosecution in "any of the districts where an essential conduct element of the crime took place." *United States* v. *Ramirez*, 420 F.3d 134, 139 (2d Cir. 2005).

The government's contrary view cannot be squared with *United States* v. *Cabrales*, 524 U.S. 1 (1998). There, when determining venue for a money-laundering offense, the Supreme Court first analyzed the text and operation of the money-laundering statute to identify the essential conduct elements. *See id.* at 6-7. Only then did the Court turn to analyze whether that essential conduct occurred in multiple jurisdictions, permitting prosecution in any of them. Section 3237(a) thus does not alter the rule that venue is proper only where the defendant's conduct occurred; it merely provides a choice in venue where the defendant's conduct occurred in multiple jurisdictions.

12

This Court's en banc decision in *United States* v. *Lozoya*, 982 F.3d 648 (2020), makes clear that Section 3237(a) does not override constitutional venue protections. There, the Court addressed the question whether, under Section 3237(a), a prosecution for assault in airspace lay in the district where the plane landed. In answering that question, the Court employed a two-step analysis, first determining whether "constitutional requirements" are satisfied and only then turning to "statutory requirements." *Id.* at 651-656. If "the Constitution settles the issue" and forecloses venue in a particular district, the Court reasoned, "Congress's venue statutes do not apply." *Id.* at 652 n.4. The Court ultimately concluded that the Constitution imposed no limits on venue because a crime in airspace occurs outside any State or federal district; the Court then held that a provision of Section 3237(a) not applicable here authorized prosecution where the plane landed. *See id.* at 652-653.

The government is thus incorrect that a Section 1001 offense can continue into a jurisdiction where the defendant did not engage in any conduct. *See* U.S. Br. 54. The Constitution limits venue to the place of the defendant's acts, and Section 3237(a) must be "read in light of . . . constitutional requirements." *Travis*, 364 U.S. at 637. The government compares a Section 1001 violation to kidnapping, *see* Br. 54, but that comparison only highlights the centrality of the defendant's conduct in determining whether an offense is continuing. An essential conduct element of kidnapping is the defendant's "act

13

of holding" the victim, and that act does not end when the victim is "first" seized. *United States* v. *Garcia*, 854 F.2d 340, 343-344 (9th Cir. 1988) (citation omitted).

2. The government also asserts that Section 3237(a) "eliminated the 'restrictive approach'" to statutory interpretation mandated by *Johnson*. Br. 43 (citation omitted). The government is again mistaken.

*Johnson* implicated the predecessor version of Section 3237(a), which was substantively identical to the current version of Section 3237(a). *See* 53 F. Supp. 596, 597 & n.1 (D. Del.) (quoting 28 U.S.C. § 103), *aff'd*, 323 U.S. 273 (1944). There, the Court was interpreting the Federal Denture Act, which prohibited the use of the mails for sending or bringing certain types of dentures into a State. *See* 323 U.S. at 273. The defendant had mailed prohibited dentures from Chicago to Delaware, and the government prosecuted him in Delaware. Invoking the continuing-offense statute, the government argued that the prohibited conduct was using the mails, and thus the defendant's conduct began in the sending district and continued into the receiving district. U.S. Br. at 4-5, 13-14, *Johnson*, *supra* (No. 44-43), 1944 WL 42515.

The Court rejected the government's argument and held that venue lay only in Chicago, where the defendant sent the package. *See* 323 U.S. at 278. While acknowledging that the Federal Denture Act was susceptible to the government's interpretation, the Court nevertheless adopted a more restrictive

14

interpretation: "the crime of the sender is complete when he uses the mails in Chicago," and the offense did not continue into the receiving district. *Id*. at 277. Where multiple reasonable interpretations of a criminal statute exist, courts should adopt the narrower one for venue purposes—"construction should go in the direction of constitutional policy" of "trial in the vicinage." *Id*. at 276. The Court thus declined to permit venue under the continuing-offense statute. *See id*. at 278.

In response to *Johnson*, "Congress wrote the second paragraph" of Section 3237(a), *Lozoya*, 982 F.3d at 653 n.6, which expressly provides that "[a]ny offense involving the use of the mails . . . is a continuing offense," 18 U.S.C. § 3237(a). But the second paragraph of Section 3237(a) is irrelevant here; the government invokes only the first paragraph. *Johnson*'s "restrictive approach" is therefore directly on point, and it applies with even more force to Section 1001. *Cf. Travis*, 364 U.S. at 634. The use of the words "material" and "materially" in Section 1001 do not "inescapably" describe the defendant's conduct, much less a "process" of continuing conduct. *Johnson*, 323 U.S. at 277. And unlike the statutory text in *Johnson*, Section 1001's text is not reasonably susceptible to the government's interpretation. *See* pp. 8-9, *supra*.

3.     In his opening brief, the Congressman explained why *United States* v. *Angotti*, 105 F.3d 539 (9th Cir. 1997), does not support the govern-

ment's venue argument. *See* Appellant Br. 39-40. The government neverthe-less argues that venue was proper under *Angotti* in the Central District of California because the Congressman "directed" his statements there. *See* U.S. Br. 44. The government treats the "direction" of the statement as synonymous with its "potential effects": "[t]he potential effects of [the statements] were in the Central District of California, because [the statements] were directed at federal investigative efforts occurring there." *Id.* at 20 (internal quotation marks and citation omitted). The government's "directed at" test is thus no different from its effects-based test, and it suffers from the same flaws. *See* pp. 4-10, *supra*.

*Angotti* does not support the government's argument that, under Sec-tion 1001, a defendant directs his statement to wherever its potential effects could be felt. As the government recognizes, *Angotti* involved 18 U.S.C. § 1014, a criminal statute with "no materiality element." Br. 40. Instead, Sec-tion 1014 prohibits making any false statement in a loan or credit application "for the purpose of influencing" the action of a federally insured institution. 18 U.S.C. § 1014. In *Angotti*, the defendant had submitted false documents "for the purpose of influencing the bank official who had the power to approve his loan." 105 F.3d at 543. That official, the Court explained, was "the person

to whom Angotti's statements were directed," so the Section 1014 offense continued until the statements reached the intended recipient. *Id.* Because Section 1001 has no intent-to-influence element, *Angotti* is inapplicable.[4]

### C. The Government's Venue Theory Has No Limiting Principle

At bottom, every variation of the government's theory of venue is based on a statement's "potential effects" on the government. But as the government notes, materiality is an objective standard, and a false statement does not "need to be transmitted" to the location of the government investigation in order to be material. U.S. Br. 53. The logical result of the government's theory is thus that a Section 1001 offense continues wherever the statement has the *potential* to influence government agents. Under such a sweeping theory, the defendant can be "dragged to a trial in some distant" venue beyond the

---

[4] In any event, *Angotti*'s reasoning cannot survive the Supreme Court's decisions in *Cabrales* and *Rodriguez-Moreno*. *See* Appellant Br. 39. The government is correct that, in *Cabrales*, the Supreme Court addressed venue for money-laundering charges and thus abrogated only that particular aspect of *Angotti*'s erroneous venue determination. *See Cabrales*, 524 U.S. at 6 (citing *Angotti*). But the same error also infects *Angotti*'s venue determination on the Section 1014 charges. As the Supreme Court explained, lower courts had erred by extending Section 3237(a) beyond constitutional limits and determining venue based on a circumstance element—the source of the funds for the money-laundering offense. *See Cabrales*, 524 U.S. at 6-8. *Angotti*'s decision concerning Section 1014 determined venue based on the defendant's intent to influence, and there is no dispute that *mens rea* is also a circumstance element. *See United States* v. *Oceanpro Industries, Ltd.*, 674 F.3d 323, 329 (4th Cir. 2012). *Angotti*'s "directed at" test is therefore no longer good law.

17

vicinity of the crime, *Lozoya*, 982 F.3d at 651 (citation omitted), and the government would always have "the choice of 'a tribunal favorable' to it" based on its own movement and conduct, *Travis*, 364 U.S. at 634 (citation omitted). The Constitution's limits on venue were designed to protect against precisely those dangers. *See Lozoya*, 982 F.3d at 651.

In a telling moment of candor, the government recognizes the potentially limitless nature of its venue theory. *See* U.S. Br. 49. The government seeks to avoid that obviously impermissible result by limiting its theory to cases where there is a "direct" or "causal" connection between the statement and the relevant government investigation. *Id.* In support, the government cites *United States* v. *Pace*, 314 F.3d 344 (9th Cir. 2002), a case involving the offenses of wire fraud and the making of a false tax return. *See id.* at 346.

The government's causation test appears to derive from the wire-fraud statute, 18 U.S.C. § 1343, which punishes anyone who "causes to be transmitted by means of wire" communications for the purpose of fraud. In *Pace*, this Court interpreted the word "causes" in the statute to require a "direct or causal connection to the misuse of wires." 314 F.3d at 350. Of course, Section 1001 lacks any similar language, and in any event, the "causal connection" in *Pace* concerned the defendant's conduct of causing misuse of wires, not any effects on the victim. *See id.* at 349, 350.

18

In discussing the submission of a false tax return, the *Pace* Court did not mention materiality, direct effects, or causation. Indeed, the Court properly focused only on the defendant's conduct of "'making' a false tax return." 314 F.3d at 352. If the defendant sends a false document to a person through the mail, the Court explained, his act of "making" the tax return is "completed" when the mail is "received by the party to whom it is addressed." *Id.* *Pace* therefore supports the Congressman's argument that "the criminal act is completed as soon as the false statement of material fact is made." Appellant Br. 32. Under the government's theory, by contrast, the offense would continue with its potential to influence the government, far beyond the point when the statement had been made and received.

*Pace* thus does not support the government's attempt to impose an artificial "directness" or "causation" limitation on its effects-based theory of venue for a Section 1001 offense. But without any such limitation, the government's theory is boundless, because the element of materiality requires only a *potential* effect on the government. *See* p. 8, *supra.* In any given prosecution under Section 1001, that could encompass myriad jurisdictions—including Washington, D.C., in nearly every case. Such a sweeping theory of venue cannot be squared with the "constitutional policy" of "trial in the vicinage." *Johnson*, 323 U.S. at 276.

### D.   The Tenth And Eleventh Circuits Have Correctly Rejected The Effects Test

The Tenth and Eleventh Circuits correctly rejected the effects test in *United States* v. *Smith*, 641 F.3d 1200 (10th Cir. 2001), and *United States* v. *John*, 477 Fed. Appx. 570, 572 (11th Cir. 2012). Those decisions properly applied both the *locus delicti* test and Section 3237(a). They held that, under Section 1001, the "essential conduct element" is "making a false statement," *Smith*, 641 F.3d at 1207 (citation omitted), and the government investigation is not a part of the defendant's "own offense conduct," *John*, 477 Fed. Appx. at 572. In addition, they correctly rejected the government's reliance on Section 3237(a), reasoning that a verbal statement made to a government agent "during an interview"—as was the case here—"began, continued, and ended during the interview." *Smith*, 641 F.3d at 1208-1209.

The government argues (Br. 55) that *Smith* is distinguishable because the government agent there did not record or transcribe the false statement in Minnesota and then bring a recording or transcript into Oklahoma, the location of the government investigation. But that distinction turns on mere happenstance in the government agent's method of notetaking. Although the court in *Smith* mentioned that the agent "did not record the interview," the court added that the agent took notes during the interview and compiled a report of her notes "after she had returned to Oklahoma." 641 F.3d at 1203,

1208. The government's method of notetaking has nothing to do with the defendant's conduct and is not within the defendant's control. And that distinction is even more puzzling under the government's effects test. Regardless of whether a government agent records a statement or takes notes, a material statement is capable of having a similar downstream effect on a government investigation in a separate jurisdiction. The government offers no principled basis for treating the two situations differently in light of its effects-based venue test.

In his opening brief (Br. 33-37), the Congressman acknowledged that three courts of appeals have reached contrary decisions, and he explained where each of those courts erred. The government recounts those decisions but fails to respond to the Congressman's arguments as to the error in each case.

Like the government and the district court, those courts erred by determining venue based on the place of the government investigation rather than the defendant's conduct. That error is most evident in the Seventh Circuit's decision in *United States* v. *Ringer*, 300 F.3d 788 (2002), which did not apply a *locus delicti* test at all. The Second and Fourth Circuits at least purported to apply the *locus delicti* test, but their analyses suffer from the same flaws as the government's. In particular, those courts ignored the Supreme Court's

21

rules of statutory interpretation; mistakenly assumed that materiality requires evidence of effect; and conflated essential elements with essential *conduct* elements. *See United States* v. *Coplan*, 703 F.3d 46, 79 (2d Cir. 2012); *Oceanpro*, 674 F.3d at 329. And while the *Oceanpro* court did not address Section 3237(a) and the *Ringer* court failed to reach a clear conclusion, the *Coplan* court erred by interpreting Section 3237(a) without regard to constitutional limitations. The *Coplan* court held that the Section 1001 offenses continued into the district of the government investigation on the grounds that the government agents "reviewed and discussed" the statements and that the statements "continued to be false and continued to be in the jurisdiction of the United States." 703 F.3d at 80 (citation omitted). But none of those factors is a proper consideration under Supreme Court precedent. *See* p. 3-4, *supra*. The Court should therefore decline to follow *Coplan*'s reasoning and vacate the decision below because venue was improper in California.

## II. THE JURY INSTRUCTION ON MATERIALITY CONSTITUTED AN INCOMPLETE STATEMENT OF THE LAW

As Congressman Fortenberry has explained (Br. 41-55), vacatur of the judgment below is also required because the jury instructions allowed the jury to find materiality based on a legally impermissible theory. The government disagrees (Br. 22-31), but in so doing, it accepts nearly all of the key premises of the Congressman's argument—including premises it contested below. The government's argument before this Court now largely reduces to alternative

grounds for affirmance not raised below. Even if the Court were to consider those arguments, none would withstand scrutiny. The improper jury instruction on materiality independently requires vacatur of the Congressman's conviction.

1.     The government agrees (Br. 24, 28) that materiality is necessarily evaluated at the time the alleged misstatement is made and with respect to a relevant decision before an agency. As Congressman Fortenberry repeatedly argued before the district court, *see, e.g.*, D. Ct. Dkt. 195, at 4-5; 8-ER-1765, identifying the "statement" and the relevant "decision" are thus prerequisites for any materiality determination. In crafting jury instructions for a Section 1001 case, a court must consider whether each government action presented to the jury is "the type of decision that, without more, itself gives rise to materiality." *United States* v. *Johnson*, 19 F.4th 248, 260 (3d Cir. 2021); *see also* Appellant Br. 42-43.

As courts have recognized, "the materiality element would be rendered meaningless if it were sufficient for the government merely to establish the capability of the false statement to influence [a government agent's] decision to refer for investigation, investigate, or prosecute the defendant for the very statement at issue." *United States* v. *Litvak*, 808 F.3d 160, 173 (2d Cir. 2015) (internal quotation marks omitted). It would also raise serious constitutional

concerns.  *See* Appellant Br. 46-48.  At trial, however, government agents testified that the Congressman's statements caused an investigation into the truth of those statements themselves.  The Congressman thus proposed the following jury instruction to prevent the jury from finding materiality on a legally impermissible basis:

> To be material, a false statement must be capable of influencing a then-existing investigation or decision.  A false statement is not material merely because it causes the government to investigate the veracity (truth or falsehood) of the statement itself.

1-ER-106.

The government objected to that proposed instruction on the ground the jury is permitted to consider "the truth or falsity of the statement  .  .  .  with respect to the materiality of a statement."  1-ER-107.  As the government later elaborated, it believed it was erroneous to say that "materiality cannot be based solely on an investigation into the veracity of the statement itself." D. Ct. Dkt. 208, at 10.  In support of that argument, the government cited *Brogan* v. *United States*, 522 U.S. 398 (1998), which it contended "foreclose[d]" the Congressman's argument.  D. Ct. Dkt. 208, at 10.  The district court agreed, holding that it would "misstate[] the law," 1-ER-68, to instruct the jury that materiality cannot be premised merely on a statement's ability to influence an investigation "to determine whether [the defendant's] statements were true or false," 8-ER-1766.

24

The government reverses course on appeal. It now concedes that prosecutors cannot "bootstrap materiality by arguing an unimportant lie caused the government to start investigating the lie itself, rendering the lie important after-the-fact." Br. 28. The government also does not contest that one theory of materiality before the jury was that the Congressman's statements were material because they were capable of causing (and in fact did cause) an investigation into the truth of the statements themselves. Nor does the government defend its previous reliance on *Brogan*, which did not bless the sweeping reading of Section 1001 that the district court, at the government's invitation, embraced. *See* Appellant Br. 48-49.

The dispute on appeal has thus narrowed largely to two questions: whether there were alternative grounds for rejecting the Congressman's jury instruction, and whether any error was harmless.

2.     The government argues that the district court did not err in rejecting the Congressman's proposed instruction, relying on two arguments that it did not raise below and that the district court did not address.[5] Those arguments lack merit.

---

[5] From the outset, the government errs by applying the wrong standard of review. *See* Br. 22-23. It is true that "whether an instruction should be given in the first place" is "typically review[ed] . . . for abuse of discretion." *United States* v. *Heredia*, 483 F.3d 913, 921 (9th Cir. 2007). But where, as here, the appellant challenges the jury instruction as "an incomplete, and therefore incorrect, statement of the law," de novo review applies. *Norwood*

The government argues (Br. 25-27) that the district court could have rejected the proposed instruction on the ground that the first sentence—"[t]o be material, a false statement must be capable of influencing a then-existing investigation or decision," 1-ER-106—was an incorrect statement of the law. Putting aside that the government did not object on that basis below, *see* 1-ER-107, there are two problems with the government's argument.

*First*, the government's argument misses the bigger picture. As the government concedes, a statement is not material in a vacuum, but instead only with respect to "the decision of the decisionmaking body to which it was addressed." Br. 24 (citation omitted). Here, the government offered only two theories of materiality to the jury: namely, that the Congressman's statements were material to the FBI's investigation of In Defense of Christians, and that they were material to the FBI's decision to investigate the truth of the statements themselves. *See* Appellant Br. 53-54. In that context, the "then-existing investigation" of In Defense of Christians was the only legally adequate theory of materiality. The Congressman's proposed jury instruction thus accurately stated the law as applied to the facts before the jury.

---

v. *Vance*, 591 F.3d 1062, 1066 (9th Cir. 2010); *see also Peralta* v. *Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) (en banc). In any event, "an error of law *is* an abuse of discretion." *Yokoyama* v. *Midland National Life Insurance Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010).

*Second*, "[p]erfect or not, the [Congressman's] proposed instruction brought the issue" of the improper theory of materiality "to the district court's attention." *Norwood*, 591 F.3d at 1067. Even if part of the Congressman's instruction were incorrect or misleading, that would "not alone permit the district judge to summarily refuse to give any instruction on the topic" whatsoever. *Id.* (citation omitted). If the court thought that the Congressman's proposed instruction "needed further context," it "could have provdided it." *Id.*

The government additionally argues that the district court was permitted to reject the proposed instruction because the instruction it gave was "well-established" and because the Congressman did not "cite the authorities he now relies on." Br. 27-28. That argument is factually unsupported and legally unprecedented. For one thing, the use of a well-established model jury instruction "does not preclude a finding of error." *United States* v. *Bachmeier*, 8 F.4th 1059, 1065 (9th Cir. 2021) (citation omitted). For another, as the government acknowledges, Congressman Fortenberry did repeatedly cite the key Supreme Court precedent setting forth the framework governing materiality under Section 1001. *See* Br. 27-28 (citing 1-ER-106 and 8-ER-1765). But even setting that aside, there is no requirement that a defendant who objects to an erroneous jury instruction must cite all applicable precedent. "[O]nce an argument is before" a court, "it is [the court's] job to get the relevant case law

27

right"; "a party cannot forfeit or waive recourse to a relevant case just by failing to cite it." *United States* v. *Hillie*, 39 F.4th 674, 684 (D.C. Cir. 2022) (citation omitted). A court "should therefore use its full knowledge of its own and other relevant precedents" when adjudicating a legal issue. *Elder* v. *Holloway*, 510 U.S. 510, 516 (1994) (internal quotation marks, citation, and brackets omitted).

3. Because the district court's jury instruction impermissibly allowed the jury to rely on a legally inadequate theory of materiality, vacatur of the convictions is warranted (if the Court does not independently vacate based on improper venue). *See* Appellant Br. 51-53. The government's contrary arguments fail.

The district court's error was not harmless. *See* Appellant Br. 51-53. The government's harmlessness argument boils down to the contention that the Congressman's argument on materiality "does not fit the facts of this case," Br. 28, because the jury could have made its materiality finding based on the "public-corruption investigation that had begun years earlier." Br. 31. There is no dispute that one theory of materiality presented to the jury was that the Congressman's statements were material to the investigation of In Defense of Christians. The problem is that the other theory of materiality that the government chose to present was that the Congressman's statements were material to the decision whether to investigate the truth of those statements

themselves. *See* Appellant Br. 53-55. The government does not dispute that it pressed that theory below—nor could it. *See, e.g.*, 6-ER-1279; 6-ER-1391; 7-ER-1430; 7-ER-1450; 7-ER-1534–35; 9-ER-2097. Before abandoning it on appeal, the government persistently defended that erroneous theory. *See, e.g.*, 1-ER-106–107; D. Ct. Dkt. 208, at 10.

Because the jury was presented with two theories of materiality, one of which was legally erroneous, the district court's failure to instruct the jury on the legal insufficiency of one of those theories is reversible error. The district court's instructions "left [to the jury] the option of relying upon [that] legally inadequate theory," *Griffin* v. *United States*, 502 U.S. 46, 59 (1991), and this Court has no way to "tell whether the jury selected" the legally erroneous theory of materiality or the permissible one. *United States* v. *Barona*, 56 F.3d 1087, 1098 (9th Cir. 1995). Precedent thus "requires that the conviction be vacated and the case retried." *Id.* The Government offers no response to this familiar principle. *See* Appellant Br. 51-53.

In short, the government made a conscious decision to argue that the jury could find materiality based on the government's decision to investigate the veracity of the defendant's statements. As the government now recognizes, that decision cannot support a materiality finding under Section 1001. Because there is no way to know whether the jury found the Congressman's

statements material based on that legally impermissible theory, his convictions should be vacated on that basis, as well as for improper venue.

*    *    *    *    *

The judgment of the district court should be vacated, and the case remanded for further proceedings.

Respectfully submitted,

/s/ Kannon K. Shanmugam

GLEN E. SUMMERS
BARTLIT BECK LLP
  *1801 Wewatta Street, Suite 1200*
  *Denver, CO 80202*

JOHN L. LITTRELL
BIENERT KATZMAN
  LITTRELL WILLIAMS LLP
  *903 Calle Amanecer, Suite 350*
  *San Clemente, CA 92673*

KANNON K. SHANMUGAM
WILLIAM T. MARKS
MATTEO GODI
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*
  *(202) 223-7300*

JING YAN
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *1285 Avenue of the Americas*
  *New York, NY 10019*

MARCH 20, 2023

30

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-50144

I am the attorney or self-represented party.

**This brief contains** | 6,970 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [              ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Kannon K. Shanmugam | **Date** | March 20, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/22*